FIFTH AVE. UNIFORM CO. v. COMMIS-
SIONER OF INTERNAL REVE-
NUE.

No. 157.

Circuit Court of Appeals, Second Circuit.
May 7, 1934.

Olvany, Eisner & Donnelly, of New York City (Mark Eisner and Ferdinand Tannenbaum, both of New York City, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen. (Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., of counsel), for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

In September, 1928, the Commissioner of Internal Revenue notified the petitioner of a deficiency of $16,305.78 in its tax liability for the fiscal year ending September 30, 1918. The taxpayer contended before the Board of Tax Appeals, but without success, that determination, assessment, and collection of the deficiency was barred by the statute of limitations. Its appeal to this court presents the same question here.

The five-year period provided by section 277 (a) (3) of the Revenue Act of 1926, 44 Stat. 58, 26 USCA § 1057 (a) (3), was extended by waivers to December 31, 1926; and both parties agree that determination of the deficiency in September, 1928, was too late, unless it is saved by section 278 (b), 44 Stat. 59 (26 USCA § 1059). This section provides that "Any deficiency attributable to a change in a deduction tentatively allowed under * * * paragraph (8) of subdivision (a) of section 234, of the Revenue Act of 1918 or the Revenue Act of 1921, may be assessed * * * at any time." Paragraph (8) of section 234 (a) of each act provides, in substantially equivalent terms, for a reasonable deduction for the amortization of war facilities. 40 Stat. 1077, 1078; 42 Stat. 254, 255. The deficiency determined in September, 1928, was attributable to a change in the deduction previously allowed for such amortization; and the narrow issue is whether such previous allowance was "tentative."

Although the issue is narrow, a somewhat detailed statement of the facts which raise it is required. In its returns the petitioner deducted for amortization of war facilities nearly $63,000 for the fiscal year 1918, and some $10,000 for the fiscal year 1919. After an audit of these returns, the Commissioner wrote the taxpayer under date of August 4, 1923, that the amortization allowance was reduced to $69,867.12 and all of it allocated to the fiscal year 1918. Deficiencies in tax for both years were set forth. On May 15, 1924, the Commissioner wrote again, saying "immediate assessment of the additional taxes shown herein will be made." No change was made in the tax liability for 1918 nor in the amortization allowance of August 4, 1923. Apparently the taxpayer then applied for special assessment of profits taxes for the fiscal year 1918, for by letter dated October 8, 1924, the Commissioner wrote that application for special assessment was denied and a deficiency for that year was set forth. Again no change was made in the amortization allowance previously made. On December 23, 1925, the deficiency determination was protested by the taxpayer on a point relating to depreciation as distinguished from amortization. Under date of April 1, 1926, the Commissioner gave notice of a deficiency in tax for the fiscal year 1918 pursuant to a modification of his letter of October 8, 1924. The amortization allowance once more remained unchanged. No appeal was taken from the determination of April 1, 1926, and the deficiency was assessed on July 3, 1926, and paid.

In the meantime, by letter dated February 2, 1926, the taxpayer was notified that a deficiency in tax had been determined for the fiscal year 1919. An appeal to the Board was filed on March 26, 1926, the issue being whether the Commissioner was right in allocating the total amount of allowable amortization to the fiscal year 1918. Pursuant to stipulation by the parties (the precise terms of which are not shown in the present record), the Board determined an overpayment of tax for the fiscal year 1919. Computation of the amount stipulated was based upon an allocation of amortization allowances in the sum of $34,859.95 for the fiscal year 1918 and $31,563.09 for the fiscal year 1919. The Board's order of overpayment in the 1919 tax was entered on June 27, 1928. Thereafter on September 10, 1928, the Commissioner notified the petitioner of the deficiency now in question for the fiscal year 1918. In computing it he allowed $34,858.95 for

"corrected" amortization in accordance with the allocation above set forth.

■ Decision of the controversy at bar must turn on the meaning to be ascribed to the phrase "a deduction tentatively allowed." The statute did not define it; nor has the Bureau practice, so far as we are advised, formulated any definition of a "tentatively allowed" deduction as distinguished from a final allowance. In a sense any allowance of a deduction is tentative, for within the statutory period of limitation the Commissioner may, in the absence of a settlement agreement, make any number of redeterminations of tax liability, and in so doing may reconsider a deduction previously allowed. See Sweets Co. of Am. v. Commissioner, 40 F.(2d) 436, 438 (C. C. A. 2); Harriton v. Lucas, 59 App. D. C. 340, 41 F.(2d) 429, 430; McIlhenny v. Commissioner, 39 F.(2d) 356, 358 (C. C. A. 3). But if every allowance of a deduction is to be deemed tentative, the phrase in question means no more than if the words had been "a deduction allowed"; the word "tentatively" becomes superfluous. By inserting it, something different must have been intended. The question was carefully considered in Commissioner v. Ohio Falls D. & F. Works, 50 F.(2d) 660 (C. C. A. 6), and with the conclusion there reached we are in accord; namely, that the original allowance proposed by the taxpayer in his return and accepted automatically and without investigation by the Commissioner is the tentative allowance to which the statute refers, and that, after the Commissioner has completed his investigation of the claimed deduction and passed upon the question of amortization, his allowance is no longer tentative but becomes as final as can any allowance of a deduction. See, also, Norton Co. v. Commissioner, 50 F.(2d) 664 (C. C. A. 1). Cf. Diamond Alkali Co. v. Heiner, 60 F.(2d) 505 (C. C. A. 3). Applying the statute so construed to the facts of the case at bar, and leaving out of consideration for the moment any effect which may be accorded to the taxpayer's appeal from the deficiency notice for the fiscal year 1919, it seems clear that the deduction for amortization for the year 1918 was finally and not tentatively allowed by the letter of April 1, 1926, if not before. The matter had been in dispute and under investigation; the Bureau had decreased the amount claimed for two years and allocated it all to 1918; the taxpayer had acquiesced in the Commissioner's decision as to net income for 1918 by applying for special assessment. See Norton Co. v. Commissioner, 50 F.(2d) 664, 668 (C. C.

A. 1). No further investigation or action as to the 1918 deduction for amortization was contemplated by the Commissioner when he mailed the letter of April 1, 1926; nor did the taxpayer thereafter question its tax liability for that year. No appeal was taken, and the tax was paid after it was formally assessed. Had there been no appeal from the 1919 deficiency notice, the case would fall squarely within the decision of Commissioner v. Ohio Falls D. & F. Works, supra.

■ It remains to consider what effect is to be given to that appeal. It was taken on March 26, 1926, which was five days before the Commissioner's letter of April 1st with respect to the 1918 deficiency, and it questioned the correctness of the Commissioner's action in allocating all amortization to the fiscal year 1918 and disallowing any deduction for amortization for the fiscal year 1919. If the taxpayer was right in its contention as to 1919, the Commissioner was plainly wrong in allocating the full amount to 1918; the taxpayer should not receive a double deduction for part of the amortization. Nevertheless we cannot see how the appeal as to 1919 can be said to make the deduction allowed for 1918 merely tentative. Section 274 (g) of the Revenue Act of 1926 (44 Stat. 56 [26 USCA § 1048e]) expressly provides that "The board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid."

Although the Commissioner knew that the Board would have no power to correct the 1918 tax if the taxpayer's appeal as to 1919 should succeed, he stood steadfastly to his position as to the deduction allowable for 1918, sent out his deficiency letter of April 1, 1926, and allowed the statute of limitations to run without making any redetermination of the 1918 tax liability. Neither in the taxpayer's appeal nor in the Commissioner's subsequent conduct is there anything to indicate that either party to the appeal considered the deduction allowed for 1918 only a tentative allowance.

■■ It is urged that the taxpayer should be estopped to assert that the allowance was not tentative because it enables him to obtain a double deduction. But estoppel is available only against one who has misled another. See Dickerson v. Colgrove, 100 U. S. 578,

580, 25 L. Ed. 618. The taking of an appeal as to the 1919 tax did not induce any action by the Commissioner with respect to the 1918 tax. By the express words of the statute above quoted, it does not affect the tax liability of the previous year. After the statute of limitations had run against determining a new deficiency for 1918, the parties entered into a stipulation pursuant to which the Board determined an overpayment for 1919. It is not apparent how this can raise an estoppel against pleading the statute in defense to a subsequently assessed deficiency for 1918 which had not even been suggested at that time.

For the foregoing reasons we think the order of the Board was erroneous, and it is reversed.